Number 2011-5096 Parkwood Associates v. United States Mr. Gill. Yes, Your Honor. May it please the Court, Clay Gill from Boise, Idaho, for the appellant Parkwood Associates. The critical issue in this case is when did the government breach its loan contract with my client Parkwood Associates. This case is important because it's going to establish when the government breaches a contract. In our appeal, we raised two errors on the part of the district court. The first is, did the district court err in finding as a factual matter that Parkwood made a demand to prepay its loan on February 3, 1993? And the second question is, did the district court err in holding that the government's contract? That first question is not on de novo review, correct? We have to give a significant deference to the fact findings that the lower court makes. Yes, but we do have the summary judgment standard that my client is entitled to every reasonable inference from the facts that are in the record. And so what you have, and there is a factual, there's a dearth of facts in this case, because what you had is, this is a limited partnership, and the particular general partner at that time, Mr. Wood, was removed. And so all we have is a letter that was written in 1992, and that's the crux of the district court's case. And we just have a paper trail. That's all we have. And so the question is, is what is stated in that letter? And we also have regulations that come into play. But on the letter itself, the critical language of the letter that was written by the prior general partner of this 1992 letter, and the language, the critical language that this letter, along with the accompanying documents, represents our formal request to prepay Parkwood Associates, RRH number 515, plan Roman numeral II, RA loan on February 3rd, 1993. It's talking about a future statement. And what I have put into the record is the 1965E regulation. This is what we call a prepayment package. It goes back to the ALIFA statute. And these loan contracts originally had an unfettered right to prepay. And then Congress, in 1988, enacted a statute that we practitioners know as ALIFA, that's the acronym, and that took away the unfettered right to prepay. And we know from the Franconia decision that that wasn't a breach. The Supreme Court said that was a repudiation. And so there were some regulations that were implemented after the ALIFA statute came into play in 1988. And those are what we practitioners know at the time as Regulation 1965E. And 1965E provided all sorts of things. I think, by the way, you've, to some extent, cited the wrong regulations here. You've cited regulations that came into existence in 1993 that didn't exist in 1992. It may not be material, but to some extent you cited the wrong regulations. That's the best I could find, go back and find. My understanding is there were some regulations prior to that, they were the same thing. The point being... No, there were material differences, actually. But at the end of the day, it may not make a difference. Okay. The point is that the ALIFA statute, with its implementing regulations, what they attempted to do was provide all of these other things in lieu of the right to prepay. One of them could be an equity loan. One could be incentives. Let's take this 1992 letter in isolation, and let's assume that we reject your contention that it wasn't a statement of intent to prepay the loan in its entirety. Let's assume that it was a statement of intent to prepay the loan in its entirety on this, what it was, under the contract, obligate the government to allow prepayment on February 3rd? It's a future statement. There's silence on the part of the government. There's not a check that's actually tendered. You're talking about... Let me give you an example. It would be like me saying, I'm going to come down and prepay this loan on Monday, and I don't show up, and I don't tender prepayment on Monday. Has the government's breach been established on Monday, because I said I was going to come in on Monday and prepay the loan? I think that's what the district court held, but I don't think that's the appropriate rule of law. I think there has to be some affirmative action on the part of the government, and that would be something that comes back... The Court of Federal Claims was saying that once you set that date, that became the date for performance, and that the government had to agree to accept prepayment on that February 3rd date, and it breached the contract by not agreeing to that. But the loan contract always said that we had the right to prepay at any time. Nothing changed. The government always had... No, but something did change. The government repudiated your right. Yes. In the statute. Yes. And then you were on notice of its refusal to honor that obligation under the contract. Yes, but there... At that point, when you asked to repay after the government had said no, don't they have to accept? They have to accept when we actually try and prepay, and that's the whole issue here. It's a future statement, and there's nothing in response on the part of the government. And if you uphold the court claims, it's going to create a peculiar situation, because you're going to see, like I just mentioned, where someone says, I'm going to come down, I have this government contract, I have the right to prepay at any time, I'm going to come down on Monday and prepay it, and they don't show up. If this is the established rule of law, then the claim accrues on that Monday, and damages start to accrue, and the government would be liable for damages thereafter. And I think if you look at the Tamerlane decision, which came from this court, the Tamerlane decision did not find that the government went silent, because they submitted a prepayment request. It was the action on the part of the government. The government had offered equity loans. But I thought Tamerlane did make clear that when you set a prepayment date, that that becomes a date on which the government is obligated to agree to accept the prepayment, and that if the government doesn't accept the prepayment on that date, and instead offers something else, that that's a breach, right? I don't see that as the direct holding of Tamerlane. If that statement is in there, it would be dicta. But the holding of Tamerlane is that the claim accrued when the government offered equity incentive loans. And that's when this court held that the claim accrued. So what's the difference between being silent about the prepayment and offering something else? Why is one a breach and the other isn't? Because it establishes a firm date as to when the claim accrued. I mean, you don't know what the government is going to do. And this is a future statement. It's not that we came into the government and handed them a check, and the government just said... Well, there was no check in Tamerlane either. I understand. But there was a response on the part of the government. And that's what the court hung the Tamerlane claim to be on. Do you think that's sufficient to distinguish just failure to perform by the government? I just disagree with the notion that if you make a future statement that you're going to prepay on this future date, that that's the government's date that they have to perform. I mean, there has to be... The problem with that argument is that seems to have been rejected in Tamerlane. Again, Your Honor, I would argue that that would be dicta on the part of Tamerlane. Because the fact of that case was, there was a prepayment request submitted, and the government responded, and the Tamerlane court held that it was the government's response, the government's affirmative response. But what Tamerlane recognized was that the prepayment date that was set was the date that the government was obligated to perform. And to the extent that you're arguing that the statement is the prepayment date had no significance, that seems to have been rejected, right? I don't think those specific facts were addressed in Tamerlane. Because I didn't read in Tamerlane. I tried to find in Tamerlane where those particular plaintiffs had put a date that they were going to prepay in their prepayment application. Well, you read to us the language of the letter, and it says this is a formal request to prepay. Yes. Well, that's an asking, right? You're asking. A request is a request. I request that you do this. I'm asking you to do something. So you're saying we request to prepay. By utterly ignoring your request and being non-responsive to it, haven't I effectively denied the request? I see it more in terms of the repudiation. I can certainly treat it as a present breach by saying, you know what, the time has come and gone, and you didn't do it, and I'm going to find you and breach, and I can file a lawsuit. So you think on February 4th you were entitled to file a lawsuit? Absolutely. I mean, that's the whole thing of Franconia, that it's a repudiation. By enacting a list, they have repudiated the loan contract, and I have the ability to file a suit right then and there. Well, if you have the ability, if the claim had accrued, a claim has to accrue or you can't file a suit. Yes. So if the claim had accrued on February 4th, then what breach are you talking about now? You would be filing a claim under the OLIPA statute, that by enacting OLIPA, that was a repudiation, and that gives me the ability to file a lawsuit. Yes, but within six years under the statute of limitations. If your claim accrued as of February 4th, 1993, then you had until February 4th of 1999 to file a lawsuit because claim accrual starts at the statute of limitations. Yes, it's when the claim accrues, but the OLIPA statute is just a repudiation. Now, the repudiation, you said in conjunction with their failure to respond to the request when the February 4th date came along, it constituted a breach. No, I just, you can argue that their silence is a continued repudiation, just like the OLIPA statute, but there's no direct response. I mean, it's not a breach. It's just a continued repudiation because the government has announced that it's not going to perform, but they have done no affirmative action. And that's the read of the cases that I see is that there has to be some affirmative action on the part of the government to trigger a breach of contract. You made a request and they didn't respond to it. How is their silence not an affirmative action? It's a denial of your request. Whether they deny your request by sending you a letter that says denied or deny your request by simply never showing up and responding to it, aren't they both equally denial? I just, in this case, it's a future statement. It's not a specific present. It seems to be a future statement on February 3rd. The request was still not granted as of February 3rd. At that day, it's no longer a future statement. Yes. And, you know, the other argument I have is that the regulations required that you submit, put a date in there. So this is not a statement coming out of Parkwood. It's a statement that's demanded by the government, and now they're trying to hang us on it. But it's not a demand. It's a request. And this goes back to that analogy that I gave to you. If I say I'm going to come into the bank on Monday and pay this off, does that constitute a breach? And if you hope so, it's going to create a situation where the government's damages are going to start to accrue in situations where it probably would never envision that. And so with that, I'll save my time. We'll give you three minutes for rebuttal. Thank you.  May it please the Court. One thing that appears to be clear, and no one disagrees with this, under Franconia and Tamerlane, Congress' enactment of a LIPA is to be treated for statute of limitations purposes as a repudiation, which allows a borrower whose right to prepay has been restricted to either treat it as an immediate breach or wait until performance becomes actually due. And if it's not forthcoming, then at that point, he can sue then or within six years after that. Franconia specifically referred to a government rejection of the request to prepay, and we don't really have that here, do we? As this Court in Tamerlane pointed out, what the performance called for was acceptance of the request. And the reason that the conduct of the government in Tamerlane was treated as a rejection was, and essentially the words of the Court was, it was not acceptance. In other words, the government didn't say in Tamerlane, you can't prepay. But it's true in Tamerlane. Actually, it did. There were two different circumstances in Tamerlane, right? There was Mullica and Park Terrace. And in response to Park Terrace, didn't they say actually no, but in response to Mullica, they offered alternatives? Right, and Mullica was... They did say you can't prepay in one of the two. I think that's true in one of them, but obviously that was not the dispositive factor because it wasn't the case in the other. But in the other, they said, you know, please accept these incentives and stay in the program instead. That's right. And what this Court said was, that wasn't acceptance. The borrower was saying, I want to prepay. That's so frustrating to me, though. I think that is wrong, just so you know. Well, putting this in context of Olipa and the repudiation, what... I mean, why shouldn't the government be able to go back and negotiate to try and keep you in the program? It's not a rejection. It's not a rejection. It's an attempt to persuade you to stay in the program. Well, we... You're the government. Don't you think you should have been able to do that? I know you're stuck with Tamerlane. Well, we would have preferred if the courts would have held that Olipa is not a repudiation of anything, and that all the Olipa restrictions are consistent with the contractual right, but we have to live with the judicial interpretations and decisions that we have. And what Tamerlane says is that since a borrower has an unfettered right to prepay, when he exercises that right by requesting to prepay, performance has to consist of some sort of acceptance. Well, does it say that, or does it say that a counteroffer is tantamount to a rejection? It uses those words, too, but the reason it says it's tantamount is the words of the court were... At one point, I have this quoted in our brief at page 15, where the court says at 5.50 Fed Third at 11.43, that, quote, the Franconia decision requires no more formalism than the written request to prepay, followed by non-acceptance of this request by the government to trigger the running of the statute of limitations. But there has to be some evidence of non-acceptance. In this case, there was evidence of non-acceptance. The evidence of non-acceptance was, in one case, the outright rejected, and in the other case, both on Tamerlane, they counteroffered instead, which was deemed to be non-acceptance. In this case, we don't have any evidence of non-acceptance. Right. Well, the evidence we have of non-acceptance is there's no evidence of acceptance, and there's no dispute that there was not acceptance. In other words... That depends on whether this February 3rd date became the date for performance. Right. But under Kosarsky, it would seem as though when the borrower here set a date for the prepayment, that that became the date at which performance was due. That's right. And I guess the argument is that at that point, the failure of the government to accept is a breach. Right. But they're saying that there has to be some affirmative act, even after the date for performance passes. That's what Parkwood argues, but there's no reason for that. But Franconia told us to apply basic contract principles, and that's why they reversed the court, because it ignored basic contract principles. And under basic contract principles, doesn't the non-breaching party have the right to continue to perform under the contract, and to choose to continue to perform under the contract, which then becomes effective again? Well, in the context of this case, where the contractual clause that's at issue is one that's designed to allow the borrower to end the contract. They wanted to end the contract, prepay their loans, so that they are no longer subject to the rent and other affordability restrictions. But maybe they changed their mind by February 3rd. But they didn't say so. They didn't accept their offer to end the contract. Well, they could have withdrawn their offer to end the contract, and that would have made a world of difference. But they didn't do that. They don't even claim they did that. But isn't mutual performance under the contract meaningful from that point on? Well, no, because under their loan contract, which they were trying to get out of, they were obligated to continue performing, to continue to keep the rents within the program restrictions and so on, as long as the loan remained, there was a loan balance outstanding. So they had no choice but to perform. They couldn't turn around and say, since you refused to accept my offer to prepay, you've breached the contract, therefore I'm no longer participating in the program, because the obligation to participate in the, it sort of turns it around, because the obligation to participate in the program exists as long as they haven't prepaid, and they're asserting a contractual right to prepay, and that's the only thing they say the government breached, that the government shouldn't... Well, surely if the government breached, they didn't have an obligation to continue to perform, right? They had an obligation to continue to perform the requirements of the loan agreement, because... That makes no sense to me. I mean, if there's a government breach, they don't have an obligation to continue to perform. I mean, whether there's any significance to the continued performance, whether that undoes the breach in some way is a different question, but they don't have to continue to perform if the government has breached. Well, if that were true, then in the context of this case, nothing would make any sense. In other words, there would be no consequence, there could be no damages for a breach, because the only harm from the breach is the fact that they have to stay in the program. If they don't have to stay in the program because the contract's been breached, then they haven't been harmed, because that's exactly what they wanted to do, is to end the contract, and if they do that, then there's no harm. The claim, the entire breach of contract claim here is not that the contract as a whole was breached, but rather that one particular provision of the contract was breached, and that was the provision that would let them out if they prepaid. So the premise is, unless and until they can prepay, or the loan matures, but I mean short of the loan maturing, unless they can prepay, they can't get out of the requirements of the loan agreement, and the only reason they would want to prepay is because that would get them out of the requirements of the loan agreement. And their claim is that because we didn't let them prepay, they were stuck in the program having to perform the requirements of the loan agreement. If their contention is that by breaching the contract they got out of the loan agreement, then whether it's time barred or not, there's just no claim, because their entire claim of damages, of harm, stems from their having to stay in the program rather than get out. Why isn't the activity that occurred in 2003, their second request to prepay, why isn't that a separate breach? Because as this Court held in Tamerlane, there's no continuing claim doctrine here. They can demand performance, and if it's not complied with, if performance is not forthcoming when due, that's the breach. They can't start the clock running again by repeated requests for performance. And that, in Tamerlane, it was the same issue. It wasn't a past repeated request. They were focusing there on the possibility of a future repeated request, repetition of the request, and the Court said, no, you made your request, it was not complied with, it was breached, statute of limitations. Why can't they make a future request that just goes to damages? They can't go back and get the damages for the government's failure to comply, because they've lost their right to bring the claim from 1993 to 2003 by the statute of limitations, but why can't they file a separate request in 2003 and seek damages from that point on for being forced to stay in the program? Well, again, as this Court in Tamerlane said they couldn't, and the basic reason is that the contract, the contractual obligation in question, was not one that called for some continued performance. That would be a different sort of thing, where non-performance over a period of time doesn't necessarily mean that the rest of the performance called for won't occur. But here, performance would have been acceptance of prepayment. And that can only happen once, because once you accept prepayment, then the loan is over and everybody goes away and everybody's happy. But the breach here was that when the obligation to accept prepayment arose, it didn't happen. So is your view that once the government breached, and everybody then continued to perform under the contract apart from that clause, that they had somehow waived that clause or some form of equitable stoppage was applied to prevent them from in the future trying to assert that clause to prepay a second time? Is it a one-shot deal? Essentially, it's a one-shot deal. So they say they effectively have waived their right to ever prepay by virtue of having asked for it once and the government remaining silent in response. Well, we have to recall that if the enactment of ALIPPA had been construed as a full-blown breach, then the statute of limitations would have started running in 1989. This is in the context where after it's repudiated, you get essentially as Judge Allegra below put it, Franconia gives you two bites of the apple but not three. So they could have sued when ALIPPA was enacted or they could have waited for performance to become due and then sue within six years of that. When you say performance to become due, they asked the government to accept prepayment on February 3rd. What should have happened after that? What would the government normally do in response? I mean, the government doesn't have any obligation. It's not like they have to tender a deed first and then they'll get the money or some. Normally the way we have... How do they know the government breached? Well, because the government... If one were to say that for the government to perform, there has to be an actual tender of a check and then the government cashing the check and releasing the liens, then that would be one thing. But if a demand had to be a literal tender, but again as the court said in Tamerlane, that formality is not required. What there has to be is if there's an offer to prepay, there has to be acceptance. Now once the government communicates some sort of acceptance, which would essentially be to tell the borrower, yes, you can prepay. Send us a check or whatever. Then they would send the check and they would go through the process of releasing the liens on the property and that would... The government wouldn't have acted until you got the check. In fact, you wouldn't have released the liens on the property until the check came, right? Yeah, that's right. So, I don't know. I mean, why do they have to assume the government is denying the request by not responding? Because they didn't... Again, the... I just see this as a very different situation than Tamerlane, which involves an outright refusal to grant the request expressed. And then in the other one, a negotiation sort of incentive offer, which was construed as a rejection. Well, and the reason it was construed as a rejection is that it wasn't an acceptance. One of the differences... I mean, that made, I think, more of a difference in Tamerlane because in Tamerlane, the request didn't have a date certain. So, if the government had done nothing, it would have been hard to pinpoint exactly at what point there's a non-acceptance. So, the focus then was on the government did, in fact, respond in the way it did. That was non-acceptance. Here, because the request had a date certain of February 3rd, not doing anything by February 3rd is non-acceptance. The government couldn't later say, yeah, you can prepay by February 3rd as requested because it's passed. Does that mean if their letter had said, we request to prepay without a date certain, that the government would never have breached if it never responded? No, I think if there was no date certain, then we have to struggle with how do you pinpoint if and when there's been a non-acceptance if the government had just been passive. We don't have that problem here. I mean, that's the Kosarsky issue. When there's no date certain, it's hard to say there's been a breach. But when there is a date certain, then non-response by the stated due date is a rejection. I think, again, every other argument that's been raised has essentially been rejected by Tamerlane. And the distinctions, while the cases are not absolutely identical, the distinctions are really not material. And under the holding in Tamerlane, the court below correctly dismissed this case as time-barred and for these reasons that decision should be affirmed. Thank you. Mr. Gale, you have three minutes. Thank you, Your Honor. What I wanted to focus on in my rebuttal time is the court's questions and counsel's statement here about the... The critical question is, is when did this action accrue? And... Well, Tamerlane specifically rejected the argument that you're making, didn't it, about there having to actually be a tender of the money and that it was sufficient that they requested the right to repay? I believe that you're correct. I think that the Tamerlane court was looking to see if that particular request met the requirements of a tender. And I do believe that they found that it was a tender. Now, I'm saying take a good, hard look. When I looked at the Tamerlane case, I couldn't see if the court had addressed the regulations because these are regulations that came about as part of the Olympic statute. Now, I know that you have... It appears that the court has the particular regulations that were in play in 92. I've given you the 1965e regulations. It was my understanding they were the same. But if you wanted to... It just gets back to the original loan contract. And the court kept asking questions today about when was the government's performance due. The government's performance to accept prepayment was always... It was always obligated to accept prepayment when there was a tender because that's what the loan contract provided, that you had an unfettered right to prepay at any time. And then you had the Olympic statute... It was specified they had an obligation to agree to accept the tender on that date, right? If we actually made a tender... No, no, but that's the distinction that Tamerlane seems to have rejected is that it's not measured by an actual tender, that when you make an offer to prepay, that invokes the government's obligation to agree to the repayment, right? Yes, but my argument here is my client's trying to get hung on regulations that required them. If they were going to do this alternative proposal, which was the 1965e process, you have to put a date in there that's more than 180 days after application, and the government says in those same regulations that it's really a meaningless statement because you can't prepay anyways without their permission. And so they're trying to hang us on a statement that they're requiring as part of their regulations. And I just think that the better rule of law here would be some affirmative act on the part of the government that constitutes a breach, because then you have a hard and fast rule as to when the claim accrues, the government knows when it might be obligated for damages, and everybody's on notice as to when you need to bring the claim. You agree with Judge Moore, though, that if, in fact, you're correct, that you can't recapture damages for that period from 1993 forward. I'm sorry. No, we're not trying to make a claim for damages. We're trying to make a claim for damages from 2003, when the government actually responded to the prepayment request that was submitted in May of 2003. The government responded in July of 2003, and that's when we find... that's when we believe the claim accrued, and that's how we file the action. Thank you for your time. Thank you, Mr. Hicks. Thank you both for how appropriate this is, and that concludes our session for the day.